UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SCOTT DANIELS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant. | Case No. 17-cv-05914-LB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S REQUEST TO FILE AN AMENDED COMPLAINT**<br><br>Re: ECF No. 72 |

## INTRODUCTION

The plaintiff, who is representing himself, sued the City and County of San Francisco ("CCSF") after he was allegedly detained and arrested without cause, handcuffed, and left in a hot patrol car for a significant period of time.[1] He also alleged that he was placed in debilitating control holds and that unnecessary weight was placed on his back and head.[2]

The plaintiff asserted three claims under 42 U.S.C. § 1983: (1) unlawful search and seizure in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution; (2) excessive force in violation of his rights under the Fourth and Fourteenth

---

[1] Fourth Amended Complaint ("FAC") – ECF No. 35 at 5–7 (¶¶ 15–20). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 15 (¶ 45).

ORDER – No. 17-cv-05914-LB

Amendments; and (3) violations of his right to petition the government for redress of grievances under the First Amendment.[3] He also brought four claims under California state law: (1) violation of the Bane Act, Cal. Civ. Code § 52.1; (2) assault; (3) battery; and (4) negligence.[4]

The CCSF now moves for summary judgment in its favor on all of the plaintiff's claims.[5] It argues that the plaintiff's federal claims fail because there is no evidence that it has unconstitutional policies of illegal detention, excessive force, or denying the right to petition the government for redress of grievances.[6] It argues that the state law claims are barred by the plaintiff's failure to file a government claim.[7]

Under Civil Local Rule 7-1(b), the court can decide motion without oral argument. The court grants the CCSF's motion for summary judgment on all of the plaintiff's claims. But, the court grants the plaintiff's request (raised in his opposition to the motion for summary judgment) to amend his complaint to name the individual officers involved in the incident.

## STATEMENT

### 1. The October 16, 2015 Incident

On October 16, 2016, the plaintiff left his home and walked down O'Farrell Street towards downtown San Francisco.[8] The plaintiff was "screamed at violently and aggressively by a San Francisco Police Officer [Azim #548]" and told to stop.[9] The plaintiff stopped.[10] The plaintiff

---

[3] *Id.* at 7–11 (¶¶ 22–36).

[4] *Id.* at 11–15 (¶¶ 37–50). The plaintiff also listed a fifth state law claim, intentional infliction of emotional distress, in the caption of the fourth amended complaint, but did not plead the claim. *See id.* at 1.

[5] Mot. – ECF No. 72 at 6.

[6] *Id.*

[7] *Id.*

[8] Daniels Decl. – ECF No. 79 at 2.

[9] *Id.*

[10] *Id.*

ORDER – No. 17-cv-05914-LB  2

asked if he was being detained and the officer replied, "No I just want to talk to you."[11] The plaintiff said he could "continue on [his] way" and the officer said he could not.[12] The plaintiff asked again if he was being detained and the officer said, "no asshole! Shut the fuck up and stay right here!"[13] The plaintiff told the officer that if he "wasn't being detained, charged with any crime, or arrested, [he was] free to leave and [didn't] have to talk to him."[14] The officer told the plaintiff to put his hands on his head.[15] The plaintiff asked if he was being arrested and the officer said, "No! Shut the fuck up and put your fucking hands on your head!"[16] The officer asked the plaintiff what his name was, where he lived, and whether he had a knife.[17] The plaintiff did not have a knife, and told the officer that he would not speak to anyone without a lawyer present.[18] The officer told the plaintiff he was not under arrest and to "just answer[his] questions."[19]

Other officers arrived and yelled, "Answer his fucking questions asshole! You're not under arrest asshole!"[20] One officer told the plaintiff that if he didn't answer their questions or talk to them they would "say [he] was crazy and take [him] away to a mental hospital."[21] The plaintiff repeated that he would not talk to anyone without a lawyer and said he did not submit to searches of his person or property.[22]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

One officer searched the plaintiff, "putting his hands down inside [the plaintiff's] pants past the waistband" while another "illegally searched [his] back pockets and clothing."[23] One officer pulled the plaintiff's wallet, "which was sealed closed by [a] zipper out of [his] pocket and went through the whole thing."[24] The plaintiff was made to sit on the "filthy" ground.[25] The plaintiff pulled out his phone "to call a lawyer" and an officer took it away from him.[26] An officer handcuffed the plaintiff "cranking [the] cuffs down on [his] wrist causing agonizing pain and injury to both wrists."[27] The officer "laughed and pulled up on both [the plaintiff's] right and left ring fingers and middle fingers putting extreme pressure on the nerves causing excruciating pain and injury."[28] All of the officers claimed that the plaintiff "attacked someone with a knife."[29] One officer "lied to the other officers saying he found a knife sheath" on the plaintiff, "which he had not and it is not in the police report or on the written or audio CAD."[30] "The plaintiff was not acting violently in any way nor resisting police officers."[31]

The officers shoved the plaintiff into the back of a police car "sideways pushing [his] head hard and putting painful pressure on it and [his] back."[32] He "didn't fit in the back of the car so they left [him] on [his] side handcuffed."[33] The police transported the plaintiff to St. Francis Hospital, where they kept him in the back of the "very hot vehicle" with the windows rolled up for

---

[23] *Id.*

[24] *Id.* at 2–3.

[25] *Id.* at 3.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at 4.

[32] *Id.* at 3.

[33] *Id.*

"approx[imately] twenty minutes."[34] The officers mocked the plaintiff for being "wet and sweaty."[35]

The officers took the plaintiff into the hospital in handcuffs, pulling up on his fingers.[36] He told the "intake person" that he "was brought there under no detainment, no arrest, and no charges and asked them to note it all down and I told them Officer Taft was still pulling up on my fingers and had me handcuffed causing extreme pain and injury(s)."[37] James Shieh, M.D., examined the plaintiff, determined that he was "stable," and discharged him.[38]

The plaintiff did not file a government complaint with the CCSF related to the incident.[39]

### 2. The Police Report and Officer Taft's Declaration

The CCSF submitted the police report from the October 16 incident and a declaration by one of the arresting officers. The police report described the encounter with the plaintiff as follows:

> Upon arrival I interviewed [Reporting Party ("RP") 1] who had called police. [RP 1] stated that he is a sex offender from a crime he committed 30 years ago. [RP 1] said that Daniels knows that [he] is a sex offender and frequently harasses him. [RP 1] stated that before he called police, he saw Daniels in the lobby. Daniels cursed [RP 1] for being a sex offender and pulled out a pocket knife and kept it to his side. Daniels challenged [RP 1] and said, "Come on man, let's go." Daniels then walked outside. [RP 1] did not want Daniels arrested but wanted him to leave.
>
> Other witnesses who were on the scene, and did not want to be named, corroborated [RP 1's] account of events.
>
> I interviewed Daniels. Daniels had a 1000 yard stare and would not answer any questions. Daniels rambled about the constitution and did not seem in his right mind.
>
> Due to Daniels['s] apparent mental state, and the fact he threatened [RP 1] with a knife, I determined he was a danger to others and detained him [REDACTED].

---

[34] *Id.*

[35] *Id.* at 3–4.

[36] *Id.* at 4.

[37] *Id.*

[38] Hospital Records, Ex. C to Hannawalt Decl. – ECF No. 81-4 at 16.

[39] Daniels Dep., Ex. A to Hannawalt Decl. – ECF No. 76-1 at 104 (103:1–7); Rothschild Decl. – ECF No. 73 at 2 (¶ 5).

ORDER – No. 17-cv-05914-LB    5

A search of Daniels did not yield a knife.

SFGH [REDACTED] was on red alert. We transported Daniels to St. Francis Hospital where we transferred the care and custody of Daniels to the Hospital staff.[40]

In his declaration, Officer Taft described his encounter with the plaintiff as follows:

> On October 16, 2015, I was working as a patrol officer in police uniform assigned to Tenderloin Police Station. My partner that day was Officer Kovit. At about 9:40 a.m., we were dispatched to 516 O'Farrell to investigate a suspect who the 911 caller said had threatened the caller with a knife.
>
> When Officer Kovit and I arrived at 516 O'Farrell, Officer Azim, another patrol officer employed by the San Francisco Police Department, was already on scene and had detained Scott Daniels. I spoke with the 911 caller, who reported that Mr. Daniels pulled out a pocket knife and challenged the caller by saying, "come on man, let's go." The caller said Mr. Daniels then walked outside. Another witness on scene, who did not want to be named, confirmed the caller's report.
>
> After interviewing the 911 caller and witness, I went outside where Mr. Daniels was detained. Mr. Daniels was rambling and did not seem in his right mind. Mr. Daniels did not respond to questions. Based on the totality of the circumstances, I determined that Mr. Daniels was in need [of] psychiatric evaluation and based on his threatening conduct with a deadly weapon, I determined that he was a danger or others.
>
> At the time of Mr. Daniels'[s] transport, I was informed and believed that Psychiatric Emergency Services ("PES") at San Francisco General Hospital was at capacity. Therefore, Officer Kovit and I transported Mr. Daniels to St. Francis Hospital for psychiatric evaluation pursuant to Welfare and Institutions Code § 5150.[41]

## STANDARD OF REVIEW

The court must grant a motion for summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to

---

[40] Incident Report, Ex. A to Daniels Decl. – ECF No. 79-1 at 3.

[41] Taft Decl. – ECF No. 74 at 1–2 (¶¶ 2–5).

ORDER – No. 17-cv-05914-LB 6

1 interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material

2 fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party

3 must either produce evidence negating an essential element of the nonmoving party's claim or

4 defense or show that the nonmoving party does not have enough evidence of an essential element

5 to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz

6 Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076

7 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party

8 need only point out 'that there is an absence of evidence to support the nonmoving party's case.'")

9 (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *E.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

## ANALYSIS

The CCSF moves for summary judgment on the following grounds: (1) the plaintiff's first cause of action under Section 1983 fails because there is no evidence that the CCSF has an unconstitutional policy of illegal detention; (2) the plaintiff's second cause of action under Section 1983 fails because there is no evidence that the CCSF has an unconstitutional policy of excessive force, and handcuffing in connection with detention is not a Fourth Amendment violation; (3) the

1 plaintiff's third cause of action under Section 1983 fails because there is no evidence that the
2 CCSF has an unconstitutional policy of denying the right to petition the government for redress of
3 grievances; and (4) the plaintiff's state-law claims are barred by his failure to file a government
4 claim before bringing this lawsuit.[42]

The court grants the summary-judgment motion as to all of the plaintiff's claims against the CCSF. The court will allow the plaintiff to file an amended complaint (on his federal claims only) naming the individual police officers involved in the incident.

### 1. *Monell* and Supervisory Liability — 42 U.S.C. § 1983

The CCSF is the only named plaintiff in the operative complaint.[43] The plaintiff argues that the CCSF is liable for the alleged constitutional violations because the SFPD officers were acting within the course and scope of their employment with the CCSF.[44] The CCSF argues that it is entitled to summary judgment on the plaintiff's § 1983 claims because there is no evidence of (1) an unconstitutional policy of illegal detention, (2) an unconstitutional policy of excessive force, or (3) an unconstitutional policy of denying the right to petition the government for redress of grievances.[45]

The court grants the CCSF's motion because the plaintiff has not produced evidence to support his claims that the CCSF has unconstitutional policies of illegal detention, excessive force, or denying individuals the right to petition the government for redress of grievances, and in any event, the policies are not unconstitutional.

#### 1.1 Applicable Law

Local governments can be sued under § 1983 if the public entity maintains a custom, practice, or policy that amounts to deliberate indifference to a plaintiff's constitutional rights, and the policy

---

[42] Mot. – ECF No. 72 at 6 (¶¶ 1–7).

[43] FAC – ECF No. 35 at 1.

[44] *Id.* at 5 (¶ 11).

[45] Mot. – ECF No. 72 at 6 (¶¶ 1–3).

ORDER – No. 17-cv-05914-LB  8

results in violation of a plaintiff's constitutional rights. *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 690–91 (1978). There are three ways to show a policy or custom:

> (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quotation omitted). The practice or custom must consist of more than "random acts or isolated events" and instead, must be the result of a "permanent and well-settled practice." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1988), *overruled on other grounds by Bull v. City and Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Thus, "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless" there is proof that the incident "was caused by an existing, unconstitutional municipal policy . . . ." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

### 1.2 Application

The plaintiff's constitutional claims against the CCSF are based on his personal experience with the SFPD and interactions between other individuals and police officers that he witnessed. During his deposition, the plaintiff testified as follows:

> Q: Other than you, what other — other than your experience on October 16, 2015, what evidence do you have that the police — San Francisco Police Department maintains a practice or policy of stopping people without charging or detaining them?
>
> A: 'Cause they've done it to me many times.
>
> Q: How many times?
>
> A: Over five.
>
> Q: So other than your experience, what other evidence do you have that the San Francisco Police Department has a policy of — an unconstitutional policy of detaining — stopping people without charging them or detaining them?
>
> A: I've been a regular witness to it without count all over the entire City of San Francisco and other cities.[46]

---

[46] Daniels Dep., Ex. A to Hannawalt Decl. – ECF No. 76-1 at 227–28 (26:14–27:5).

ORDER – No. 17-cv-05914-LB          9

SFPD Acting Captain Kathryn Waaland submitted a declaration in support of the CCSF's motion.[47] Captain Waaland is the Commanding Officer of Risk Management, which encompasses the Legal Division of the SFPD.[48] The declaration included the SFPD General Orders related to use of force, psychological evaluation of adults, and prisoner handling and transportation that were in effect on October 16, 2015.[49] The plaintiff does not allege that the SFPD's policies as written are unconstitutional (and a review of the policies reveals that they are not unconstitutional on their face).

Rather, the plaintiff points to his own interactions with the SFPD and incidents he observed in San Francisco between the SFPD and other unnamed people to support his argument that there is a longstanding practice or custom of detaining people without cause.[50] In his deposition, the plaintiff specifically described eight interactions between himself and the SFPD.

In the early 1990's, police officers stopped the plaintiff "for no reason" when he was walking into a concert.[51] They "handcuffed [him] and put [him] in the back of a van with other people."[52]

Later in the early 1990's, SFPD officers took the plaintiff out of his seat at Candlestick Park during a San Francisco Giants game, handcuffed him, and put him in a van.[53] The police released him onto a "dark street" ten to fifteen minutes away from the ballpark.[54] He was not arrested or charged or given any paperwork.[55]

---

[47] Waaland Decl. – ECF No. 75.

[48] *Id.* at 1 (¶ 1).

[49] General Order 5.01 (use of force), Ex. A to Waaland Decl. – ECF No. 75-1; General Order 6.14 (psychological evaluation of adults), Ex. B to Waaland Decl. – ECF No. 75-2; General Order 5.18 (handling and transportation of prisoners), Ex. C to Waaland Decl. – ECF No. 75-3.

[50] Opp. – ECF No. 80 at 4 (¶ 5).

[51] Daniels Dep., Ex. A to Hannawalt Decl. – ECF No. 76-1 at 29 (28:15–16).

[52] *Id.* (25:16–18).

[53] *Id.* at 32 (31:7–8).

[54] *Id.* at 35 (34:17–25), 38 (37:25).

[55] *Id.* at 38–39 (37:25–38:6).

On a New Year's Eve in the late 1990's, police officers stopped the plaintiff on Polk street, handcuffed him, and put him in a van.[56] The officers took him to a police station and put him in a cell with other people, where he stayed for "over six" hours.[57]

In 2004, the police arrested the plaintiff at his then-residence on Clement Street.[58] They took him to jail and then released him after he went before a judge.[59] The plaintiff referred to an incident after this one with a "Sergeant Harrell" "in which CCSF and County of San Francisco was sued and settlement was reached," but he did not specifically describe what happened.[60]

In 2017, the police stopped the plaintiff when he was trying to enter AT&T Park for a Giants game and told him "someone had accused [him] of stealing money."[61] The plaintiff denied stealing money (he picked up some money from the ground).[62] His impression was that "the officers were harassing [him] in detaining [him] based on profiling [him] on [his] look, how [he] looked."[63] He asked if he was being detained, was under arrest, or was charged with anything and the police said no but said he could not leave.[64]

Sometime between 2012 and 2014, the police broke down the plaintiff's door at his apartment at 516 O'Farrell Street after someone reported that he tried to hit them with a baseball bat.[65] The plaintiff was "not Mirandized . . . not charged with anything . . . not arrested."[66] The plaintiff was

---

[56] *Id.* at 39–42 (38:15–41:3).
[57] *Id.* at 45 (44:6–18).
[58] *Id.* at 51 (50:5–20).
[59] *Id.* at 52 (51:1–19).
[60] *Id.* at 57 (56:8–12).
[61] *Id.* at 59 (58:2–3).
[62] *Id.* at 61–63 (60:14–62:24)
[63] *Id.* at 68 (67:3–5).
[64] *Id.* at 72 (71:11–19).
[65] *Id.* at 70–71 (36:16–10), 77–78 (76:22–77:2).
[66] *Id.* at 71 (70:18–19).

"put in handcuffs without being under arrest or charged with anything."[67] He described the interaction with the police as follows:

> I was taken off the property in a car to 850 Bryant, and I was never charged with anything. And I was held there for 72 hours, the maximum they can hold you, and I was summarily released without charge, without incident, without being charged with any incident, any crime, anything from my own home where I was legally locked into my own property.[68]

There was a second incident at 516 O'Farrell Street when the plaintiff hit someone in the head with a baseball bat.[69] He testified that he was "defending his property" and the person tried to break into his unit.[70] The plaintiff testified that the police detained him without telling him he was under arrest.[71]

The plaintiff fails to raise a genuine issue of material fact that the officers' conduct was pursuant to an unconstitutional policy or custom. Accordingly, the court grants summary judgment in favor of the CCSF on the plaintiff's federal claims.

### 1.2.1 Unlawful Search/Detention/Arrest (Claim One)

To support his first claim, the plaintiff points to his "history of being unlawfully and unreasonably detained by SFPD over three decades."[72] He also claims that he was unlawfully detained on October 16, 2015, and supports that claim with a declaration.[73] Finally, he testified that he witnessed the police detaining people without probable cause "on a regular basis."[74]

"Proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom." *Henderson v. Cty. and Cnty. of San Francisco,* No. C-05-234 VRW, 2006 WL 3507944, at *8 (N.D. Cal. Dec.

---

[67] *Id.* at 72 (71:9–10).

[68] *Id.* at 71–72 (70:19–71:1).

[69] *Id.* at 79 (78:14–17).

[70] *Id.* at 78 (77:2–6)

[71] *Id.* at 80 (79:1–3).

[72] Daniels Decl. – ECF No. 79 at 5; Daniels Dep., Ex. A to Hannawalt Decl. – ECF No. 76-1 at 29–80 (28:15–79:3).

[73] Daniels Decl. – ECF No. 79 at 2.

[74] Daniels Dep., Ex. A to Hannawalt Decl. – ECF No. 76-1 at 88–102 (87:8–101:8).

1, 2006). (internal citations omitted). In *Henderson v. City and County of San Francisco,* the plaintiffs, who were present and former inmates of the San Francisco County Jail, brought due-process claims against individual sheriff's deputies, the City and County of San Francisco, the San Francisco Sheriff's Department, and the San Francisco Department of Public Health Services. *Id.* at *1. The plaintiffs detailed six instances of excessive force and indifference to their medical needs over the course of a year, and declarations submitted at summary judgment described "approximately 17 other incidents over the course of 29 months." *Id.* at *1–3, 11. The court denied summary judgment as to the individual deputies, finding that material issues of fact remained regarding how much force was necessary during the encounters. *Id.* at *5. But the court granted summary judgment in favor of the municipal defendants because the evidence was not sufficient to establish that they maintained an unconstitutional policy or practice. *Id.* at 11.

Here, the plaintiff described eight personal encounters with the police over the course of 30 years and testified that he witnessed other people being detained without cause (without any details about the names of these individuals, the officers who detained them, or any other witnesses). The plaintiff's own experiences and the alleged instances he witnessed fail to demonstrate a policy of detaining individuals without probable cause "founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The court grants the defendant's motion for summary judgment as to the plaintiff's first claim.

### 1.2.2 Excessive Force and First Amendment Violations (Claims Two and Three)

The plaintiff's argument that the CCSF maintains a custom of using excessive force is based on the police's handcuffing him roughly and pulling up on his fingers, causing "excruciating pain and injury"[75] The plaintiff does not allege excessive force in any of the other encounters with police described in his deposition testimony or that he witnessed the use of excessive force on others in San Francisco.[76] His only evidence for his excessive force claim is his declaration

---

[75] Opp. – ECF No. 80 at 6–7.

[76] *See* Daniels Dep., Ex. A to Hannawalt Decl – ECF No. 76-1 29–80 (28:15–79:3).

describing his own experience with the police on October 16, 2015.[77] This is not sufficient because a plaintiff "cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)).

The plaintiff's third claim is that the CCSF "violated [his] right to petition government for a redress of grievances" in violation of the First Amendment.[78] To support this, he points to the officers' telling him to "shut the fuck up" and answer their questions and taking his phone away when he wanted to call a lawyer.[79] As with his claim of excessive force, Mr. Daniels does not allege (or provide evidence indicating) that his First Amendment rights were violated in any of his eight prior encounters with the police or that he witnessed other people's First Amendment rights being violated.[80]

Because the only evidence the plaintiff presents to support his Section 1983 claims for excessive force and First Amendment violations against the CCSF pertains to a single incident of allegedly unconstitutional action by a non-policymaking employee, these claims cannot survive summary judgment. *Davis,* 869 F.2d 1233. The court grants summary judgment in favor of the CCSF on these claims.

## 2. California State-Law Claims

The plaintiff raises four state-law claims: (1) a violation of the Bane Act Cal. Civ. Code § 52.1; (2) Assault; (3) Battery; and (4) Negligence.[81] The CCSF argues that the plaintiff's state law claims are barred because he did not file a claim under the California Government Claims Act

---

[77] Daniels Decl. – ECF No. 79 at 3.

[78] FAC – ECF No. 35 at 11 (¶¶ 32–36).

[79] Daniels Decl. – ECF No. 79 at 2, 3.

[80] *See* Daniels Decl. – ECF No. 79.

[81] FAC – ECF No. 35 at 1. To the extent the plaintiff did intend to raise a claim for negligent infliction of emotional distress, that claim is dismissed for the same reasons discussed herein.

ORDER – No. 17-cv-05914-LB 14

("GCA").[82] The plaintiff did not respond to this argument in his opposition.[83] The court holds that the plaintiff's state law claims are barred because there is no evidence that he filed a government claim.

### 2.1 Applicable Law

With some exceptions not relevant here, the GCA requires a party seeking to recover money damages from a public entity or its employees to present a written claim for damages to the entity within six months after accrual of the claim before filing suit in court. Cal. Gov't Code §§ 911.2(a), 945.4; *see, e.g.*, *Cardenas v. Cty. of Alameda*, No. C 16-05205 WHA, 2017 WL 1650563, at *5 (N.D. Cal. May 2, 2017) (GCA presentment requirement applies to state-law claims for negligence). "'Where compliance with the [GCA] is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general [dismissal].'" *Heyward v. BART Police Dep't*, No. 3:15-cv-04503-LB, 2015 WL 9319485, at *4 (N.D. Cal. Dec. 23, 2015) (quoting *Mangold v. Cal. Publ. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995)). "Only after the public entity has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity or its employees." *Avila v. California*, 2015 WL 6003289, at *7 (E.D. Cal., 2015) (citing *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007)).

### 2.2 Application

At his deposition, the plaintiff testified that he did not file a government claim related to the October 16, 2015 incident:

> Q: Did you make a government claim in connection with that incident?
> A: What do you mean by government claim, please?
> Q: A claim against CCSF and County of San Francisco apart from filing of the lawsuit.
> A: No.[84]

---

[82] Mot. – ECF No. 72 at 13–15.

[83] *See* Opp. – ECF No. 80.

[84] Daniels Dep., Ex. A to Hannawalt Decl. – ECF No. 76-1 at 104 (103:1–7).

With its motion for summary judgment, the CCSF submitted a declaration by Matthew Rothschild, Chief of the Claims Division in the San Francisco City Attorney's Office.[85] The Claims Division creates a database that includes the information from the [City] Controller's claims logs as well as information sch as location, type of incident, City department[,] and so forth."[86] As the head of the Claims Division, Mr. Rothschild is the "custodian of records of all claims filed against CCSF."[87] Mr. Rothschild searched for a government claim related to the October 16, 2015 incident, and summarized his search and results as follows:

> On or about May 29, 2019, I conducted a diligent search in the [Claims Division database] for any Government Claims filed with CCSF alleging an injury suffered by Scott Daniels on October 16, 2015. I searched by the date of the incident, and Scott Daniels' name, and I was unable to locate any claims filed by or on behalf of Plaintiff Scott Daniels related to events in October 2015. There were several other claims filed by Mr. Daniels: in 2009, Mr. Daniels claimed that he was discriminated against by Muni on April 10, 2009; in 2010, Mr. Daniels claimed he was illegally detained by the San Francisco Police Department on November 1, 2009; in 2010, Mr. Daniels also claimed he was denied clothing, a shower, and access to an attorney by the San Francisco Sheriff's Department on November 1, 2009; in 2011, Mr. Daniels claimed he was subject to excessive force and unlawful search and seizure by the San Francisco Police Department on September 9, 2010. There is no government claim arising from Mr. Daniels' police contact on October 16, 2015.[88]

The fact that the plaintiff did not submit a government claim is undisputed, as he did not cite to any evidence in his opposition showing that he did.[89] Thus, the court grants the motion for summary judgment on the state-law claims.

### 3. Amendment of the Complaint to Name Individual Officers

In his Fourth Amended Complaint, the plaintiff did not name the individual officers involved in his October 16, 2015 encounter with the SFPD.[90] In his opposition, the plaintiff requests that the

---

[85] Rothschild Decl. – ECF No. 73 at 1 (¶¶ 1–2).

[86] *Id.* at 2 (¶ 4).

[87] *Id.*

[88] *Id.* (¶ 5).

[89] *See* Daniels Decl. – ECF No. 79; Opp. – ECF No. 80.

[90] FAC – ECF No. 35 at 1.

ORDER – No. 17-cv-05914-LB    16

court allow him to amend his complaint to name the individual police officers.[91] The plaintiff "did not know the deadline to amend pleadings included assigning the names of the police officers to DOES 1–10."[92] The plaintiff "didn't initially have the names of the three police officers nor did the defendant who had to ask the Plaintiff for some time to find said names."[93] The plaintiff represents that he "will provide an amended complaint with the police officer's names with the permission of the judge and [] does not ask for extended time to file [an] amended complaint."[94] The CCSF opposes this request because the last day to amend the pleadings has passed and the plaintiff did not name the individual officers despite knowing their identities "for some time."[95]

Under Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013). "[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 701 (9th Cir. 1988). "The rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant. Presumably unskilled in the law, the pro se litigant is far more prone to make errors in pleading than the person who benefits from the representation of counsel." *Crowley v. Bannister,* 734 F.3d 967, 977–78 (2013) (internal citations omitted).

"A district court abuses its discretion by denying leave to amend where the complaint's deficiencies could be cured by naming the correct defendant." *Id.* at 978 (citing *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (2000); *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248–49 (9th Cir. 1995)). Here, the plaintiff knows the identities of the officers (as evidenced by his use of their names in his filings), and could cure the deficiency in his pleading by naming them.

---

[91] Opp. – ECF No. 80 at 5.

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] Reply – ECF No. 81 at 3.

ORDER – No. 17-cv-05914-LB 17

The last date to amend the pleadings was March 15, 2019.[96] Because this date has passed, Federal Rule of Civil Procedure 16(b) applies, which means that the deadline "shall not be modified except upon a showing of good cause and by leave of the district judge." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992); *see* Fed. R. Civ. P. 16(b)(4). The court finds good cause to allow Mr. Daniels to amend his complaint.

The court grants the plaintiff leave to file an amended complaint naming the individual officers. Any amended complaint must not name the CCSF (because the court has granted summary judgment on those claims) and must not include any state-law claims because they are barred by the plaintiff's non-compliance with the GCA.

## CONCLUSION

The court grants the defendant's motion for summary judgment and dismisses the plaintiff's federal and state-law claims against the CCSF with prejudice and without leave to amend. The court grants the plaintiff's request to amend his complaint (only as to the federal claims) to name the individual officers. If the plaintiff wishes to file an amended complaint, he must do so by August 26, 2019. If he does not, the court will close the case and enter judgment in favor of the CCSF.

**IT IS SO ORDERED.**

Dated: August 1, 2019

LAUREL BEELER
United States Magistrate Judge

---

[96] Case Management Order – ECF No. 67.

ORDER – No. 17-cv-05914-LB      18